May it please the Court, I am Robert Kraft, representing Richard Easly at Council Table with me is Marissa Olson. Ms. Olson did the lion's share of the briefing in this case. I would ask the panel to consider two principles of the general maritime law in deciding this case. The first is that when there are ambiguities or doubts regarding a seaman's entitled to maintenance, they are to be resolved in favor of the seaman. The second rule is, and consistent with the first rule, is that federal courts have held that where a CBA limits a seaman's right to maintenance, such limitation must be explicit. Do you think that rule applies to this case? Definitely it applies to this case. What the appellees are trying to submit to the court is that Mr. Easly's right to maintenance is limited by the language of Rule 1301. So this is definitely a limitation on the right to maintenance. Two Second Circuit cases, Marsick v. Reinauer, directs the court to enforce a purported limitation on a seaman's right to maintenance where it has not specifically been bargained for and explicitly stated it should not be done. And on June 25 of this year, the Second Circuit in Padilla v. Maersk Line at 721 F3rd 77 cited Marsick and held that, quote, our responsibility is to determine the actual terms agreed to by the parties to the CBA and not to impose a limitation where none was intended or agreed to. Now, this case turns on to what extent, whether and to what extent, the CBA places explicit limitations on Mr. Easly's right to maintenance, which the express language in the provision states is to be paid, shall be paid at $90 a day. The CBA language does not state that $63 per day shall be considered lost wages. It states that it, quote, would be considered in advance towards the recovery of lost wages. And what the effect of this language is, is that maintenance shall be paid at $90 a day, but if there is a claim and if there is a recovery for lost wages, the employer receives a credit to the payment of lost wages. What has to be considered is that this only comes into effect where there has been a claim under the Jones Act or the unseaworthiness theory against the employer for lost wages. And lost wages and maintenance are clearly separable and distinct elements of damages. And the courts are clear on that and there is no dispute on that. Well, that's certainly at least one reasonable interpretation of the provision, but I'm not sure that's the only reasonable interpretation. And if it's true that that's not the only reasonable interpretation, what should we do? Well, I'm glad to hear you say that my interpretation is one reasonable interpretation because where a provision, a contract provision is susceptible of two reasonable interpretations, the contract is therefore considered ambiguous. And this is an ambiguity which the general maritime law requires the courts to resolve in favor of the seaman. Well, then you don't believe it's a question of fact. I don't believe it's a question of fact because it's a question of law as to whether this provision is ambiguous. And it is ambiguous because first it says shall be. No, no, no, no, not a question of law of whether it's ambiguous. That's a question of law, but say then as a matter of law we conclude it is ambiguous. What happens from there? You're saying as a matter of law it has to be interpreted in favor of the seaman, right? That's what I'm saying. Yes, sir. The usual rule is that an ambiguity goes through a trial of fact for resolution. The extrinsic evidence before the court is the affidavit of Mr. Conklin and the affidavit of Mr. West. No, the question to me is that to me that doesn't resolve it. But if it's not resolved, what should happen? Should we decide or should we send him back for a trial? That's the question. This court should decide, and the reason this court should decide is because as a matter of law, if it is ambiguous it is to be resolved in favor of the seaman. Additionally, the extrinsic evidence is both declarations are saying the same thing, and they're saying the interpretation that we are offering to the court as to what this contract provision means. It's only ambiguous in terms of the interpretation that the opponents are arguing. So with that, the court should decide as a matter of law that this provision is as we have offered and the ruling should be as a matter of law in Mr. Reesley's favor. Let me just ask you because it seems like your interpretation of this rule seems to result in the odd and some might say perverse result that a seaman recovers lost wages from a third party is entitled to a higher maintenance rate than the seaman who recovers lost wages from his own employer. How do you explain that? I think you're mistaken in that. The maintenance is always received from the employer. The third parties have no obligation to pay maintenance. The maintenance is paid at $90 per day. So if the seaman recovers from a third party. Recovers lost wages. Recovers lost wages from a third party, it's totally separate and apart from the right to maintenance. And I might also add, and this is another reason the court can decide this is a matter of law. I mean, you're saying it's totally separate and apart, but then that would be the result, though, in this case that Mr. Reesley would be getting a higher maintenance rate than a seaman who recovers lost wages from his own employer. Is that not correct? That is not correct. He would always receive a maintenance rate of $90 per day. But as to the recovery against the third party, if this issue was a valid issue, this should have been brought up in the district court before Judge Lasnik, because what we're talking about is an advance against the recovery of lost wages. So the time to bring this issue before the courts was at the time we tried the tort case in front of Judge Lasnik and the lost wages were recovered in that case. At that point, Fresco should have said, well, just a second, we get a credit for the amount of maintenance that. . . Well, that's the situation she's bringing up. Suppose they did say that. What would happen? Well, then we would have these arguments in front of Judge Lasnik about. . . What would be the resolution of those arguments? Well, hopefully it would be, just as I'm asking this court to resolve it, that there's ambiguity in the language of the conduct. No, but don't you end up with the result Judge McGee is suggesting? Perhaps I didn't understand the question then. I don't think so, because I think whether the legal issue was brought before this panel or before Judge Lasnik, the result should be the same. The maintenance is always paid at $90 a day, and that's what the contract explicitly says. It seems like the only question is, in your interpretation, is the amount of lost wages that are paid by somebody, and there may be a credit available in some circumstances or not, but it doesn't affect maintenance. It's a lost wages problem. Correct. And lost wages are not in front of us. That's correct. Okay. Okay, I'd like to reserve a minute and 37 seconds. You may do that. Thank you. May it please the Court, I'm Mark Warner of LaGrobe, Canada, and Paul representing the appellees in this case. I think it's important to start off just briefly to make sure everyone is thinking in terms of what this case is about and what it is not about. This is not about denying a seaman maintenance. Mr. Easley was paid over $88,000 of maintenance over more than a two-year period and continues to be paid maintenance given the credit that was allowed by Judge Martinez. Right. It's the amount of maintenance that's at issue. The amount of the maintenance is at issue. That's correct. You're at the proper amount of maintenance. And this is not a case seeking a modification of existing law as to how to interpret maintenance or the rights of seamen to maintenance. No, but let me just cut to the chase as to why this contract, at least to me, seems ambiguous. It's the use of the word advance in Rule 13-whatever-it-is. And advance usually comes from an employer, and that's the interpretation that the seaman is seeking here. That is, if we're strangers and you give me some money, it would be referred to normally as a loan. But if we're in an employment relationship and I'm earning wages, you would give me an advance against the wages that you will contractually owe me. So it seems to me that their interpretation is at least plausible. And so now I want to ask you sort of the big question that my colleagues were asking earlier. If the contract is ambiguous, and I know you don't agree that it is, but I want you to assume that for the moment. If the contract is ambiguous, does Vaughn v. Atkinson require us to interpret it in favor of the seaman, or do we do something else? No. With those two choices, you'd have to do something else. What's the something else? It would have to go back to the trial court. For what? For determination of what the purpose of the contract of Rule 13 was. What do you mean by for determination? Why can't we make that determination? Is it a trial determination by a jury or a court? Is it a legal determination? What is it? It would not be a jury matter. This is a maritime matter without a jury trial. So why don't we do it here? If it's ambiguous. I'm not sure of the answer to that, Your Honor. It is an issue of law, and you are considering this case de novo, of course, as a contract interpretation and a declaratory judgment action. So you very well could decide to decide it here. But as far as the issue about whether a bias should be shown in favor of a seaman, Mr. Easley, in this case, that's totally against the case law. What case says that we don't interpret an ambiguity in a maintenance case in favor of the seaman? Well, two Ninth Circuit cases, Your Honor, Gardner v. Sealand and Nipscomb v. Foss, which are cited in our brief, held that in a case where there's a collective bargaining agreement, which there is here, the seamen have been represented by sophisticated negotiators by the union that are looking out for their best interests, and they may give some ground in certain areas as far as benefits going to a seaman, but that's to obtain concessions from the employer for concessions on another side. Right. But that still doesn't answer really the question, which is that there seems to be some extrinsic evidence at least that supports your opponent's view of what the intention was in drafting Rule 13 the way it was. Well, as we've discussed in our brief, Your Honor, we don't think, if you're referring to the Conklin Declaration, that that is not extrinsic evidence that should be considered. Of course, you have to find ambiguity before it would be considered. Right. But if you feel there is some, Mr. Conklin admitted that the issue of whether Rule 13 should apply if a seaman recovered wage loss from whatever source was never considered. That wasn't part of the consideration. It wasn't part of the negotiation. And so the purpose of offering this extrinsic evidence is to try to usually establish what the negotiating positions were, what was discussed while the contract was being negotiated. He's admitted in his declaration that that issue was not considered at all. And so we're left with just the plain language of Rule 13. Which is not at all plain because of the word advance. Well, but, Your Honor, the advance, our position is if Mr. Easley had never recovered, never sought or never recovered wage loss from any party, whether it's my client or his employer, Foss, that he would have definitely been entitled to the $90 per day. He probably would have had wage loss because of his injury, so he'd be receiving maintenance and he'd receive the wage loss. But we feel the clear language of the Rule 13 is that if he recovered, that of that $90, it clearly and expressly states $27 is maintenance, $63 is advance toward wage loss. Well, it doesn't quite say it exactly as usual. Well, I know that they pointed out that it says would be considered. I don't think that that language is determinative, quite frankly. And the advance aspect, Your Honor, in our feeling is that he gets his wage loss up until the time if and when he receives a reward of his wage loss. But it seems to me that this whole thing is designed to be a credit towards lost wages and not in any situation to reduce the $90 a day, which is what shall be the maintenance. And it seems like you're trying to use it backwards. At least that's how it appears to me. But yet, Your Honor, in Rule 13 it specifically says $27 would be considered. Would be. Right. And so where that comes into play is how much credit do you get if you get from your employer lost wages later on, so they don't have to pay all of it. That's how it reads to me. That's the natural reading of it to me. But, Your Honor, that requires reading in languages nowhere appears in Rule 13. Well, not necessarily, Counsel. It seems like, and I guess maybe I can take a little run at this, because Rule 13.01 uses the words advance and would be. It appears suggesting that the reduction is for some anticipatory payment of lost wages. It seems for which FOS would be liable. But FOS was never liable for Mr. Easley's lost wages. So I'm trying to figure out, I guess, the same thing. How do you square the text of the rule with your interpretation? Because it seems like there, you know, I'm not sure how this applies to a third party. And I think you're saying that it should apply to a third party. Yes, Your Honor. Well, first of all, FOS is an appellee in this case. As far as the maintenance issue and entitlement to maintenance, Mr. Easley is only entitled to receive maintenance from FOS, his former employer. FOS is an appellee here. I'm just arguing for both FOS and my client as the appellees here. So it's not as though that we're trying to get a benefit from the CBA for a third party that was not a party to the action. Yeah, but isn't this a contract, the result of a collective bargaining agreement between FOS and the IBU? And Fresco was never a party to it. Is that correct? That's correct. But, Your Honor, but FOS is the one. Part of this case is about what the proper rate of maintenance is. That's directly applicable to FOS. The contract says it shall be $90.00, period, full stop. But with rest of the term here, Your Honor, with just and generous. My Latin is very old. $27.00 would be considered maintenance and $63.00 would be considered in advance toward recovery. Exactly. And our position, Your Honor, is that while maintenance is stated in a general way in the first sentence of Rule 13, the immediate next sentence, the second sentence, breaks that down and explains what that $90.00 consists of. In the event that there's lost wages. To me this is what makes sense. It would be so considered if FOS paid the lost wages. But, Your Honor. That's what makes sense. Because as Judge Graber started by saying, well, you know, they're talking about advances. And certainly a third party wouldn't make an advance, right? Well, no, Your Honor, I respectfully disagree. First of all, that's reading. A third party wouldn't make an advance? That would require reading language into Rule 13 that's definitely not there. Well, the word advance is there and it has a meaning. What is there, Your Honor? The word advance is in the rule. And we're not saying that advance is not relevant. But advance is that, in our position, is that if Mr. Easley never received or was able to recover lost wages, then he would have this built-in advance in this payment that was made to him on a monthly basis. In response to a question you asked, Your Honor, if Mr. Easley is allowed to prevail in this case, he will receive overall more money than he would have received if he had decided instead to sue his employer. And I'm talking about the overall amount, the maintenance and the lost wages. He's asking for continuing to receive the amount that Rule 13 designated as lost wages, even though in April of last year he received full payment, over $500,000, for his past and future lost wages with no reduction for contributory fault or any other thing. So it's unfair that he gets to choose which party he sues and avoids this credit for the unearned wages that we feel is expressly stated in Rule 13. Well, I don't know if it's unfair or not. In other words, the question is this. Here's the pot of lost wages paid by a third party. The question is, who should get the advantage, right? Foss or Easley? Are you saying it's fair for you to get it? If you never sued the third party, you'd be paying $90 a day. Well, I'm saying it's fair for Foss to receive it, first of all, because there is employer. They're obligated under the contract to pay $90 a day. Well, that's disregarding, we feel, the second sentence. But they didn't pay him lost wages. No, they didn't. So they never got the $63 credit. But the fact is Mr. Easley received the lost wages. And what is fair in this situation, whether Mr. Easley should receive double payment? Fair is should Foss get or should Easley get, right? Which is more fair? Is that the question? I think under the wording of Rule 13, it's clear that it was intended and fair that Foss receive it. I don't see the word fair in Section 13 of the contract. That's yours and my representation, Your Honor. Thank you, Counselor. You exceeded your time. I'm sorry. I did exceed my time. There were a few things raised in their reply brief as far as whether we should have raised this issue at the trial of the prior personal injury case. I don't know if you've already discounted those arguments, which I definitely think you should. I won't say anything. But if you think that's an important issue, I'd certainly be willing to discuss that. I don't think we have any further questions. Thank you. You have a little bit of rebuttal time remaining. It will just take a second. With regard to whether this court should send this back to the district court, Mr. Warner conceded this is an issue of law. There is no factual issue to try before the district court. This is a matter of contract interpretation, and I ask this court to make the decision on this case. Thank you. Thank you, Counsel. We appreciate the arguments of both counsel. They have been very helpful, and the case is submitted.
judges: Tashima, Graber, Murguia